UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CECIL CLAYTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15CV470 AGF |
| | ) | |
| GEORGE LOMBARDI, | ) | |
| | ) | |
| Defendant, | ) | |

## MEMORANDUM AND ORDER

Cecil Clayton is scheduled to be executed on March 17, 2015, at 6:00 p.m. for the 1996 first degree murder of a police officer, Deputy Christopher Castetter. He brings this action under 42 U.S.C. § 1983 against George Lombardi, the Director of the Missouri Department of Corrections, seeking an emergency declaration of his rights under the Eighth and Fourteenth Amendments.[1] He also seeks a stay of his impending execution. After careful review, the Court finds that the complaint is frivolous and fails to state a claim upon which relief can be granted. As a result, this action is dismissed without further proceedings. *See* 28 U.S.C. § 1915(e)(2)(B) (mandating *sua sponte* dismissal of *in forma pauperis* actions that are frivolous, malicious, or fail to state a claim.).

### Background

Clayton was convicted of first-degree murder and sentenced to death on October 27, 1997, by the State of Missouri. On January 29, 2014, the Missouri Supreme Court

---

[1] The Court has reviewed Plaintiff's financial information, and his request to proceed *in forma pauperis* is granted. Plaintiff shall pay a partial initial filing fee of $1.00. *See* 28 U.S.C. § 1915(b).

directed Clayton to show cause why an execution date should not be set, the final procedural prerequisite for setting an execution date. Mo. Sup. Ct. Rule 30.30(d). Clayton's response included the opinion of two experts, who opined he is incompetent to be executed. In March 2014, the State of Missouri informed the Missouri Supreme Court that Lombardi had requested the Missouri Department of Mental Health to assist him in determining whether "reasonable cause" existed to believe Clayton was incompetent to be executed. Mo. Rev. Stat. § 552.060.2. On December 18, 2014, the State notified the Missouri Supreme Court that Lombardi had no reasonable cause to believe Clayton lacked capacity under Missouri law. The Missouri Supreme Court granted Clayton's motion for leave to file a supplemental response to the order to show cause, and he filed it on January 9, 2015. On February 6, 2015, the Missouri Supreme Court entered an order setting March 17, 2015 as Clayton's execution date.

### A. Clayton's Crime

In 1996, Clayton became angry at his girlfriend in a convenience store in Purdy, Missouri. *State v. Clayton*, 995 S.W.2d 468, 473-74 (Mo. 1999) (*Clayton I*). When Clayton pushed his girlfriend, a clerk in the store phoned the sheriff's department. The Purdy police chief arrived and waited there until Clayton and his girlfriend left separately. *Id.* at 473. Within an hour, Clayton drove his truck to his girlfriend's residence. She was not there, but her sister called the sheriff's department when she saw Clayton sitting in his truck in their driveway. *Id.* Deputy Castetter was dispatched and arrived at the residence at 10:03 p.m. Three or four minutes later, two other deputies arrived to help Deputy Castetter deal with Clayton. When they arrived, however, they

found Deputy Castetter in his patrol car, bleeding profusely from a point-blank gunshot wound to his forehead. *Id.* His gun was still in his holster. Deputy Castetter was taken to the hospital but soon died of his wound. *Id.* at 474.

Within 15 minutes of this murder, Clayton arrived at a friend's house, brandished a pistol, and exclaimed "would you believe me, if I told you that I shot a policeman, would you believe me?" *Id.* Clayton told his friend he needed him to provide an alibi. Clayton then drove his friend to Clayton's house. Less than a half hour after the crime, the two arrived at Clayton's home just as the police were arriving there to question him about Deputy Castetter's murder. Clayton asked his friend "should I shoot them?" His friend answered "No." *Id.* Clayton got out of his truck and, claiming he could not hear the officers, walked away from them and toward the side of his house with his right hand in his pocket. The officers saw him take something out of the pocket and put it in a stack of concrete blocks next to his house.

The officers arrested Clayton and later found his gun among the concrete blocks. *Id.* In a subsequent interrogation, Clayton stated that Deputy Castetter "probably should have just stayed home" and that "he shouldn't have smarted off to me." Clayton added, however, "I don't know because I wasn't out there." Later, Clayton admitted his involvement in Deputy Castetter's murder to a cellmate. *Clayton v. State*, 63 S.W.3d, 201, 204 (Mo. 2001) (*Clayton II*).

### B. Clayton's Brain Injury

Clayton was 56 years old in 1996 when he killed Deputy Castetter. Approximately 24 years before he committed that crime, Clayton was injured while working in a

3

sawmill. A piece of wood broke off a log he was sawing and lodged in Clayton's head. Surgery was required to remove the object, and this procedure resulted in the loss of nearly eight percent of Clayton's brain and 20 percent of a frontal lobe. *Clayton II*, 63 S.W.3d at 205. At trial, Clayton's brother Marvin testified that, after the injury, Clayton changed. "He broke up with his wife, began drinking alcohol and became impatient, unable to work and more prone to violent outbursts." *Id.* at 204. Another brother, Jerry, testified during the penalty phase about Clayton's "childhood and life as a part-time pastor and evangelist prior to the sawmill accident and, after the accident, his marital breakup, drinking alcohol and his antisocial personality." *Id.*

From the beginning of this prosecution, Clayton has argued that the effects of his 1972 brain injury absolved him of criminal liability for the 1996 murder of Deputy Castetter, and further argued that it left him incompetent to proceed in some – but not all – stages of his case. During the guilt phase of his trial, Clayton argued that the accident rendered him incapable of deliberating or forming the intent necessary for the jury to find him guilty of first-degree murder. *Clayton II*, 63 S.W.3d at 204. In addition to the testimony from his brother, two experts testified that he was not capable of "deliberating, planning, or otherwise coolly reflecting on a murder when agitated" and that his inculpatory statements to the police should be discounted because his injury made him unusually "susceptible to suggestion." *Id.* The jury rejected this evidence and found Clayton guilty of first-degree murder. In the penalty phase of his trial, Clayton argued that his injury was a mitigating factor that should make the death penalty inappropriate in his case. *Id.*

4

Clayton raised numerous claims in his federal petition for a writ of habeas corpus, including many based on the impairments created by his 1972 accident and resulting brain injury. *See Clayton v. Luebbers*, No. 02-MC-8001-CV W NKL, 2006 WL 1128803 (W.D. Mo. Apr. 27, 2006) (*Clayton III*), *aff'd*, *Clayton v. Roper*, 515 F.3d 784 (8th Cir. 2008) (*Clayton IV*). Though not conclusive of the question now before this Court, these claims and the Western District court's rejection of them are relevant because Clayton's competence argument relies on a condition that existed throughout his legal proceedings and – even though his experts refer to the condition as worsening with age – neither Clayton nor his experts identify any evidence to support the fact that his competence is materially worse now than in 2005 and 2006 when his federal habeas petition was litigated and rejected. In 2006, as part of his petition for habeas relief in the federal courts, Clayton claimed that his trial counsel was ineffective for arguing both that Clayton was not the murderer, and that even if Clayton did kill Deputy Castetter, Clayton's brain injury precluded him from forming the necessary intent and deliberation. *Clayton III*, 2006 WL 1128803, at *5-8. The Western District court noted that the Missouri Supreme Court had rejected this claim, in part, because the court earlier had reached the conclusion that Clayton "did not have a good defense under either theory." *Id.* at *7 (citing *Clayton II*, 63 S.W.3d at 206-07). The district court held there was "ample evidence" to support this conclusion. *Id.* at *8.

### C. Clayton's Recent Petition In Front of the Missouri Supreme Court

On March 10, 2015, Clayton filed a petition for writ of habeas corpus and a motion for stay of execution in the Missouri Supreme Court. He argued that he was

5

incompetent to be executed under the standards enunciated in *Ford v. Wainwright,* 477 U.S. 399, 410 (1986), and *Panetti v. Quaterman,* 551 U.S. 930, 957 (2007). The Missouri Supreme Court rejected these claims, among a myriad of others, on March 14, 2015. *See State ex rel. Clayton v. Griffith*, No. SC94841 (Mo. 2015).[2]

### D. Clayton's § 1983 Complaint and Motion to Stay Execution

Clayton filed his § 1983 Complaint in this Court on Friday, March 13, 2015, at 7:11 p.m., before the Missouri Supreme Court issued its decision regarding competency. In his complaint, Clayton argues that even if found competent, he would be subject to cruel and unusual punishment due to his brain injury. He essentially makes four arguments, centered on the pre-execution drugs he could be administered. First, he argues the state, in its discretion, may offer two pre-execution drugs, midazolam and valium, to calm him, but that his brain injury renders him unable to make a reasoned and competent decision whether to take the pre-execution drugs. Second, Clayton argues that the particular nature of his brain injury, coupled with the manner in which these two drugs affect the brain, elevates the risk of an atypical reaction to the pre-execution drugs, which is likely to leave him agitated and confused, and poses a heightened likelihood that IV access will be difficult. Third, he asserts that should the state withhold the pre-execution drugs simply because of his disability, this would violate his rights to equal protection and the right to be free from cruel and unusual punishment. Fourth, he asserts that the administration of the pre-execution drugs, together with Clayton's brain injury,

---

[2] *Clayton v. Griffith* was a 4 to 3 decision, with the three dissenting judges finding that a competency hearing should be granted.

could produce extreme psychological disarray and decompensation, such that he might not understand why he is being executed. Clayton requests that this Court issue an injunction staying the execution.

On Saturday, March 14, 2015, after the Missouri Supreme Court issued its opinion finding Clayton competent to be executed, the state filed its opposition to the request for an injunction staying execution. (Doc. No. 5). Among its arguments, the state notes that the offer of pre-execution sedation is optional, and that three of the last four offenders executed have refused sedation. The state suggests that based on the representations of Clayton's counsel that the pre-execution sedatives would be ineffective and counterproductive, the state would construe the representations as a refusal of the sedatives, and not provide them. According to the state, inasmuch as the sedatives are optional, and not part of the execution protocol, it would not violate Clayton's constitutional rights were the sedatives not administered.

By separate motion filed thereafter, Clayton asks for a stay of execution, or in the alternative for the appointment of a legal guardian with power to make medical decisions. (Doc. No. 6.) Clayton continues to assert that he is not competent to consent to the administration of the sedatives, but takes issue with the state's position that in light of the arguments he raised in this action, he will not be offered the sedatives. He further asserts that the representations in the state's opposition are contrary to the Warden's prior statement that Clayton will be offered the sedatives. In its supplemental opposition, the state reaffirms that "the later statement of the Director controls… [and] Clayton will not be given optional sedatives. . . ." (Doc. No. 7 at 2.) Lastly, in reply suggestions in

support of his motion to stay, Clayton again takes issue with the state's stated decision not to offer him any sedatives. (Doc. No. 8.)

## Standard

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action is malicious when it is undertaken for the purpose of harassing litigants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd*, 826 F.2d 1061 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 678. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 680-81. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. When faced with

alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible, or whether it is more likely that no misconduct occurred. *Id.* at 681-83.

To determine whether preliminary injunctive relief is warranted, the Court must balance the threat of irreparable harm to movant, the potential harm to the nonmoving party should an injunction issue, the likelihood of success on the merits, and the public interest. *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113-14 (8th Cir. 1981) (en banc). "A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted). "The party seeking injunctive relief bears the burden of proving all the *Dataphase* factors." *Id.*

In *Hill v. McDonough*, the Supreme Court of the United States held that a motion to stay execution did not have to be brought as a habeas action, but could proceed under § 1983. 547 U.S. 573, 579-83 (2006). The Court stated "that a stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts." *Id.* at 584. "[I]nmates seeking time to challenge the manner in which the State plans to execute them must satisfy all of the requirements for a stay, including a showing of a *significant possibility* of success on the merits." *Id.* (emphasis added). "A court considering a stay must also apply 'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to

allow consideration of the merits without requiring entry of a stay.'" *Id.* (quoting *Nelson v. Campbell*, 541 U.S. 637, 650 (2004)).

**Contentions in Support of the Complaint**

In support of his four main arguments, Clayton alleges that he might be offered midazolam and valium before his execution time. *See* Compl. at 9-10 ("Prior to the insertion of the IV lines, the prisoner may be offered Valium as a sedative. . . . After the IV lines are inserted, the prisoner, at the discretion of the medical doctor supervising the execution, is offered midazolam as a sedative."). He says that "[h]is intellectual disability makes it likely that he will not cognitively understand the ramifications of the decision." *Id.* at 10-11. He further alleges that if he does accept the pre-execution drugs, he might have an atypical reaction to them that may make his execution more painful than for other capital inmates. He contends that "both midazolam and valium act on the very part of the brain where Mr. Clayton has severe damage." *Id.* at 11. Further, he asserts that "[b]ecause Mr. Clayton's abnormalities are focused in the area where these drugs act, Mr. Clayton is likely to experience an atypical response to the midazolam. He is likely to experience effects associated with frontal lobe decompensation." *Id.*

**Discussion**

In *Zink v. Lombardi*, the Court of Appeals for the Eighth Circuit articulated the standard for stating an Eighth Amendment claim:

> Stating a plausible Eighth Amendment claim in the context of the prisoners' attack upon Missouri's execution protocol first requires the prisoners to plead sufficient facts indicating that the protocol creates a "substantial risk of serious harm." Indeed, the prisoners allege the lethal-injection protocol creates a substantial risk of serious harm in that it inflicts

10

a "substantial risk of severe pain." However, successfully pleading facts to demonstrate a substantial risk of severe pain requires the prisoners to plead more than just a hypothetical possibility that an execution *could* go wrong, resulting in severe pain to a prisoner. The Eighth Amendment prohibits an "objectively intolerable risk" of pain, rather than "simply the possibility of pain." The plurality opinion in *Baze* acknowledged that the nature of executions necessarily involves the risk of pain: "Some risk of pain is inherent in any method of execution—no matter how humane—if only from the prospect of error in following the required procedure." [*Baze v. Rees*, 553 U.S. 35, 47 (2008).] But "the Constitution does not demand the avoidance of all risk of pain in carrying out executions." Instead, the Eighth Amendment requires that the prisoners show the intended protocol is "*sure or very likely* to cause serious illness and needless suffering."

*Zink v. Lombardi*, ___ F.3d___, No. 14-2220, 2015 WL 968176, at *4 (8th Cir. Mar. 6, 2015) (citations omitted).

*Zink* was an action by several Missouri prisoners, including Clayton, challenging Missouri's lethal injection protocol under the Eighth Amendment. The Eighth Circuit affirmed the district court's dismissal for failure to state a cause of action because:

> None of the alleged potentialities the prisoners identify in the second amended complaint relating to compounded pentobarbital rises to the level of "*sure or very likely*" to cause serious harm or severe pain. The prisoners' allegations are limited to descriptions of hypothetical situations in which a potential flaw in the production of the pentobarbital or in the lethal-injection protocol could cause pain. This speculation is insufficient to state an Eighth Amendment claim. By noting that the use of compounding pharmacies "often results" in "potentially unsafe drugs," the experts whose views have been incorporated into the second amended complaint underscore that the harms they have identified are hypothetical and not "sure or very likely" to occur. The prisoners rely on allegations of generalized harms resulting from the use of a compounding pharmacy to produce the pentobarbital and have failed to provide anything more than speculation that the current protocol carries a substantial risk of severe pain.

*Id.* at *6 (citations omitted).

As in *Zink*, Clayton's Eighth Amendment claim in the present action is hypothetical and speculative. The decision as to whether or not to offer the pre-execution drugs is within the discretion of the medical doctor supervising the execution. Assuming the sedatives were administered, Clayton's complaint fails, as the expert's opinion with respect to the affect of the sedatives on Clayton is stated in hypothetical terms. Ex. 26 at 2-3. Neither the complaint nor the expert's opinion demonstrate that Clayton is "sure or very likely to" suffer serious harm or severe pain as the result of the medical doctor's actions. *See Chavez v. Palmer,* No. 3:14-cv-110-J-39JBT, 2014 WL 521067, at *14-15 (M.D. Fla. Feb. 10, 2014) (rejecting as speculative a claim similar to Clayton's where such sedatives were part of the execution protocol).

Clayton further asserts that he "is not competent to comply with Missouri's execution protocol and make a rational decision on whether to accept midazolam and valium. His intellectual disability makes it likely that he will not cognitively understand the ramifications of his decision." Compl. at 10.

In his habeas petition before the Western District, the court found Clayton competent to proceed in habeas proceedings. Def. Ex. 11 at 18. The Court of Appeals affirmed that finding. *Clayton v. Roper*, 515 F.3d 784, 790-91 (8th Cir. 2008). The Western District also denied his claim that he was "mentally retarded" such that therefore his execution was barred by *Atkins v. Virginia*, 536 U.S. 304 (2002). *Clayton v. Luebbers*, 2006 WL 1128803, *43. And on March 14, 2015, the Missouri Supreme Court found that he is competent to be executed. Deft. Ex. 12 (*State ex rel. Clayton v. Griffith*, No. SC94841 (Mo. 2015)). Clayton has never been found to be mentally retarded,

12

incompetent to proceed in habeas corpus, or incompetent to be executed. In his request for a stay of execution, Clayton argues that these decisions never addressed the specific issue of whether he could make a decision to accept the sedatives. But this argument misses the mark; the evidence that Clayton has presented is simply not enough to support his assertion that he is *not* competent to make this decision. Clayton relies on the same evidence produced in his earlier cases in support of his instant complaint. *See* Cmpl. at 6 (citing Pl.'s Ex. 8, 9, 12, and 14). To state a claim for relief, a complaint is required to plead facts that show more than the "mere possibility of misconduct." *Iqbal*, 129 S. Ct. at 1950. A plaintiff's allegations must rise to the level of plausibility. *Id.* at 1950. In this case, Clayton's allegations show only a "mere possibility" that he is unable to make a rational decision whether to take the drugs.

Clayton's asserted Equal Protection claim, based on his intellectual disability, is too tangential and implausible to be recognized. "[T]he Equal Protection Clause permits a State to classify on the basis of disability so long as it has a rational basis for doing so." *Tennessee v. Lane*, 541 U.S. 509, 540 (2004). Here, based on Clayton's own complaint, there is a rational basis for not offering him the sedatives in question. Clayton's counsel argues absurdities by stating that the drugs will harm him, but that he must have the option to take them if he chooses.

In any event, it appears that the state now may make the medical decision not to offer the pre-execution sedatives, in light of the concerns raised by Clayton. This is a decision the state may make. The pre-execution sedatives are not required, and Clayton has not made a sufficient showing that the failure to offer such sedatives would violate

13

either his Eighth or Fourteenth Amendment rights. This ruling should not be read to prohibit the state from administering such sedatives to Clayton should he request them.

In addition to his four central arguments, Clayton also states that the use of compounding pharmacies to make the execution drug, pentobarbital, violates his right to be free from cruel and unusual punishment. The Court of Appeals rejected this argument less than two weeks ago in *Zink*. *Zink*, 2015 WL 968176, at *6. Clayton was a party in *Zink*. While Clayton alleges that this claim applies only to himself, as opposed to other inmates, because of his brain damage, the claim is unsupported. The Court of Appeals has already found no reason to doubt the reliability of drugs produced by compound pharmacies. *Id.* ("None of the alleged potentialities the prisoners identify in the second amended complaint relating to compounding pentobarbital rises to the level of '*sure or very likely*' to cause serious harm or severe pain. The prisoners' allegations are limited to descriptions of hypothetical situations in which a potential flaw in the production of the pentobarbital or in the lethal-injection protocol could cause pain. This speculation is insufficient to state an Eighth Amendment claim.").

For the reasons stated above, Clayton is not entitled to injunctive relief. He has not demonstrated a likelihood of success on the merits. Further, Clayton has had knowledge of his head injury and Missouri's execution protocol for several years. No compelling reason justifies the last-minute filing of this case. As stated above, the court must apply "'a strong equitable presumption against the grant of a stay where a claim could have been brought at such a time as to allow consideration of the merits without requiring entry of a stay.'" *Hill*, 547 U.S. at 584 (quoting *Nelson*, 541 U.S. at 650).

Clayton's proffered explanation for the delay is unpersuasive under these facts. As a result, Clayton has not demonstrated that he is entitled to a stay of his execution.

For each of these reasons, the complaint must be dismissed under § 1915(e)(2)(B).

Finally, because of the frivolous nature of Clayton's allegations, the Court finds that an appeal would be taken in bad faith.

## Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Clayton's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that Clayton shall pay an initial filing fee of $1.00 within thirty (30) days of the date of this Order. Clayton is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

An Order of Dismissal will accompany this Memorandum and Order.

Dated this 17th day of March, 2015.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE